UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:                                                          Case No. 06-59217
                                                                     Chapter 11
                                                                     Hon. Walter Shapero

TANGO BRANDED ENTERTAINMENT, LLC,

                          Debtor.
_____/

In Re:                                                          Adv. Pro. 07-06289

TANGO BRANDED ENTERTAINMENT, LLC

                          Plaintiff.
v.

DAIMLER CHRYSLER CORPORATION,

                          Defendant.
_____/

## OPINION DENYING DEFENDANT'S MOTION TO DISMISS

Debtor ("Plaintiff") seeks recovery from Daimler Chrysler Corporation ("Defendant") in a complaint alleging (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, and (3) tortious interference with an ongoing business relationship and expectancy. The matter before the Court is Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6).

### Background

Fairly stated, the following are Plaintiff's factual allegations as they presently appear. In February 2005, M.K. Seipke, an employee of Plaintiff, met with Julie Roehm, the Director of

1

Marketing Communications for Defendant, to discuss a radio and internet marketing program ("Totally Mom Network") being developed by the Plaintiff. At this meeting Defendant was offered the opportunity to become its founding sponsor.

In the summer of 2005, Roehm, accompanied by representatives of Defendant's advertising agency, met with Seipke and her partners. During discussions Defendant indicated its desire that Sirius Satellite Radio ("Sirius") host the Totally Mom Network. Following these discussions, Roehm informed Mel Karmazin, the CEO of Sirius, and Scott Greenstein, the President of Sirius, of Defendant's interest in the Totally Mom Network, and requested that Sirius meet with Plaintiff. In October 2005, Johnson, a representative of Plaintiff, presented the Totally Mom Network to Greenstein. At the conclusion of this meeting Greenstein expressed to Johnson that he was impressed with the proposal and informed him that he would forward to Jeremy Coleman, the vice president of entertainment programming at Sirius, Plaintiff's presentation to begin the vetting process.

On November 18, 2005, Seipke and Johnson met with Fred Sattler of Defendant's advertising agency who expressed Defendant's willingness to become the founding sponsor of the Totally Mom Network. After learning this, Plaintiff continued to develop the programming for the network and cast on-air talent. In January 2006, Johnson met with Coleman of Sirius, who apparently agreed to undertake the vetting process for the network, and indicated that if as a result the Totally Mom Network met his approval, he would approve it for a Mother's Day 2006 launch.

On January 13, 2006, Plaintiff and Defendant signed a written agreement setting forth the details of the sponsorship. The agreement, in pertinent part, called for Defendant to make an initial three million dollar payment in equal installments of one million dollars in return for which

Defendant was provided with the exclusive sponsorship. The first payment was due no later than January 2006; the second installment was due upon the launch of the network; and the final installment due thirty days after the launch. In addition, Defendant agreed to provide an additional two million dollars of advertising support for the network in 2006, and agreed to promote the network in its advertising targeting mothers. The entire contract, however was specifically conditioned upon Sirius accepting the Totally Mom Network. The first one million dollar installment due from Defendant was received by plaintiff on February 7, 2006. After finalizing the agreement, Plaintiff entered into a sublease agreement for office space in New York City to house the Totally Mom Network studios which obligated it to pay $907,374 per year for five years. In late February 2006, Coleman of Sirius had completed the vetting process and shortly thereafter, on March 1, 2006, Sirius' president contacted Defendant to confirm that Defendant still intended to support the network. However, an employee of Defendant then represented to Sirius that Defendant would in fact <u>not</u> support the network. Thereafter, on May 19, 2006, Christine MacKenzie of the Defendant informed Plaintiff that Defendant was terminating the agreement.

<u>Discussion</u>

As this is a 12(b)(6) motion, the complaint shall be construed in the light most favorable to the plaintiff, the Court must accept as true the factual allegations set forth in the complaint, and all reasonable inferences that can be drawn are drawn in favor of the pleader. *Swierkiewitcz v. Sorema NA*, 534 U.S. 506, 508 n.1 (2002). *See* 5B Charles Alan Wright & Alan R. Miller, 5B Federal Practice and Procedure: Civil 3d § 1357. In order to survive a motion to dismiss, the pleading must "provide more than labels and conclusions . . . [the] factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127

S.Ct. 1955, 1965 (2007). However, "[t]he issue is not whether a plaintiff will ultimately prevail . . . it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### *I. Breach of Contract*

Count I of Plaintiff's complaint alleges breach of contract. The dispute centers on whether and to what extent the January 13, 2006, agreement was enforceable against Defendant. Defendant points to the language, "This entire agreement is reliant on Sirius accepting 'Totally Mom' as a 24 hour channel on their network," contending that the agreement contained a condition precedent that was never met, and therefore it was not obligated under the agreement. However, Plaintiff's complaint alleges and there exist appropriate and derived inferences from same that after a lengthy vetting process Sirius did decide to approve the Totally Mom Network, and only afterwards, and when it sought to in effect verify Defendant's what appeared to be Defendant's previous approval did Defendant indicate to Sirius that it was no longer willing to support the network thus breaching the agreement. Complaint ¶ 46. Accordingly, Plaintiff's complaint effectively alleges a cause of action sufficient to withstand Defendant's 12(b)(6) motion, and therefore as to Count I the motion is denied.

### *II. Breach of Implied Covenant*

Count II of Plaintiff's complaint alleges Defendant breached the implied covenant of good faith and fair dealing. Michigan law imposes such a covenant "where a party to a contract makes the manner of its own performance a matter of its own discretion," and in such cases requires that such discretion be exercised "honestly and in good faith." *Burkhardt v. City Nat. Bank of Detroit*, 226 N.W.2d 678 (Mich. App. 1975). First, Plaintiff alleged that Defendant's performance was a

4

matter of its own discretion given the relationship between Defendant and Sirius, and accordingly Defendant was obligated to act in good faith. Complaint ¶¶ 16, 32-33. Furthermore, Plaintiff contends that Defendant made the "bad faith" representation to Sirius that it would not support the Totally Mom Network as part of an "orchestrated plan" in order to terminate the agreement. Complaint ¶¶ 56-57.

Defendant argues that because the agreement did not prohibit contact between Defendant and Sirius, nor did it require Defendant to convince Sirius to accept the network, that Defendant could not have violated the implied covenant. This argument fails at least for purposes of the pending motion, however, since Plaintiff alleged that the representations made by Defendant to Sirius were done so in bad faith for the purpose of causing Sirius to reject the Totally Mom Network so that Defendant could avoid its own obligations. Complaint ¶¶ 52-56. Accordingly, Defendant's motion to dismiss as to Count II is denied.

### III. *Tortious Interference with Ongoing Business Relationship*

Count III of Plaintiff's complaint alleges that Defendant tortiously interfered with Plaintiff's business relationship with Sirius. The elements for such a claim are, (1) the existence of a valid business relationship or expectancy, (2) knowledge on the part of the interferer of the relationship or expectancy, (3) intentional interference causing a breach or termination of the relationship or expectancy, and (4) damages caused to the party whose relationship or expectancy was terminated. *Joba Const. Co., Inc. v. Burns & Roe*, 329 N.W.2d 760, 770 (Mich. App. 1982). In its complaint, Plaintiff adequately alleged each of these elements. Complaint ¶¶ 61-68. Defendant contends that Count III of Plaintiff's complaint should be dismissed because an action for tortious interference with a business relationship does not include the interference with one's own contract. However,

this argument mischaracterizes Plaintiff's allegations. Here, Plaintiff is asserting essentially that Defendant interfered with a business relationship between Plaintiff and Sirius not the relationship between Plaintiff and Defendant. Accordingly, Defendant's motion to dismiss Count III of the complaint is denied.

<u>Conclusion</u>

For the reasons set forth above, and keeping in mind (a) the primary criterion involved above noted to wit: that Plaintiff need only to "raise a right to relief above the speculative level", and (b) Defendant might therefore still possibly ultimately prevail at a trial or pursuant to some other appropriate proceeding, Defendant, Daimler Chrysler Corporation's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied. An appropriate order will be issued.

**Signed on March 10, 2008**

           **/s/ Walter Shapero**
     **Walter Shapero**
     **United States Bankruptcy Judge**